SCHOTT, Judge
(concurring with additional reasons):
In LaCaze v. Johnson, 310 So.2d 86 (La. 1974), the Supreme Court refused a writ where the trial court had nullified an election in which there was a difference of 44 votes between the two candidates out of a total of approximately 122,000 votes cast because of the malfunction of a single voting machine which failed to register 144 votes.
The instant case is analogous in that there was a difference between the two candidates of 184 votes and a breakdown of the human election apparatus in Ward 4, Precinct 2 of St. Bernard Parish, which resulted in 178 votes being cast for one candidate or the other over and above the number of signatures placed on the precinct register and in Ward 3, Precinct 6, where there were 41 forged signatures on the register and 23 votes cast in excess of signatures placed.
Ordinarily a minor discrepancy between the number of votes cast and the number of signatures would not provide a basis for nullifying an election because it is virtually impossible to eliminate human error from the election procedure. For that reason the figure of 616 developed by plaintiff as the overall difference among 15 precincts is not persuasive, especially when one considers how little the overage was in certain precincts. For instance, in Ward 1, Precinct 3, there were only 14 votes in excess of the 693 signatures, and in Ward 1, Precinct 4, only 10 in excess of the 734 signatures. However, the problem in Ward 4, Precinct 2, is quite different. There the 178 excessive votes constituted almost 20% of the total votes cast. It is inconceivable that a group of election commissioners could have permitted so many illegal votes to be cast by mistake. If nothing more, this constitutes a gross malfunction on the part of the commissioners, no less disruptive to the election than the malfunction of the machine in the LaCaze case.
The record indicates that the discrepancy in Ward 4, Precinct 2, is not merely the result of neglect but rather is the result of fraud. There are a number of names on the poll list which do not appear to identify with any of the registered voters in the precinct, and there are three signatures which are repeated indicating that these individuals were allowed to vote twice. When the commissioners were called as witnesses in the trial court four out of five refused to testify, invoking the protection of the Fifth Amendment of the Constitution of the United States, protecting one against self-incrimination. The fifth commissioner originally refused to testify on the same ground and then recanted, but his testimony is not worthy of belief on the critical point. He stated that the reason for the 178 excessive votes was the crowd which presented themselves for voting during half time and at the conclusion of a football game. Even if believable this explanation is not an excuse for such gross malfeasance in the performance of his duties.
As to the other four, their invocation of the Fifth Amendment as an excuse for refusing to testify in this civil case compels me to infer that wrong doing was committed by them. This is not to say that such wrong doing should be attributed to either candidate, but the circumstances demon *797 strate that it was not merely neglect which caused the illegal votes to be case but fraud on the part of these commissioners.
The trial judge deducted from Tonry’s total the 23 excessive votes found in Ward 3, Precinct 6, along with votes connected with 51 forged signatures, on the apparent basis that since the election commissioners in that precinct were called by Moreau their invocation of the Fifth Amendment afforded a basis for the conclusion that fraud was committed by the commissioners in Tonry’s behalf. I can not agree with this conclusion. I agree that there is an inference of fraud on the part of the commissioners who refused to testify but there is no evidence to show in whose behalf the fraud was committed. I would not deduct these votes from Tonry’s total.
On the other hand, it is clear that gross fraud was committed in Ward 3, Precinct 6, in the form of the 41 forged signatures being placed on the precinct register. In addition, these commissioners permitted three individuals to vote twice and one to vote three times, and three votes were cast in the names of deceased persons. There were 23 more votes put through the machine than signatures collected. While this discrepancy of 23 votes standing alone might ordinarily be explained by innocent human error, but under the circumstances of gross fraud prevailing in this precinct I would eliminate these 23 votes. When the 41 forgeries and the 23 illegal votes from Ward 3, Precinct 6, are added to the 178 illegal votes from Ward 4, Precinct 2, there is a sufficient number of votes missing from the total count so that either of the candidates could have been the winner.
I joined in the majority opinion and decree and concur in the result declaring the election null and void.